# United States District Court

FILED
APR 21 2006
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

__MIDDLE__ DISTRICT OF __ALABAMA__

UNITED STATES OF AMERICA

v.

**JOSEPH ANTHONY GUTIERREZ,
HORACIO JAIMES-ALBITER,
CARLOS SOLANO-OLASCOAGA,
FRANCISCO ULLOA-JIMINEZ,
JULIO CESAR ZAVALA-ULLOA, and
OMAR TORRES-VAZQUEZ**

CRIMINAL COMPLAINT

CASE NUMBER: 2:06mj39-SRW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __April 20, 2006__, in __Montgomery__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally combine, conspire, confederate, and agree together with each other and persons unknown, to knowingly and intentionally possess with intent to distribute approximately 8 kilograms of cocaine, a Schedule II Controlled Substance,

in violation of Title __21__ United States Code, Section(s) __846__ I further state that I am a(n)

<u>Drug Enforcement Administration, Special Agent</u> and that this complaint is based on the following facts:
Official Title

SEE THE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_signature_
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 21, 2006                                              at    Montgomery, Alabama
_____                             _____
Date                                                             City and State

Susan Russ Walker, U.S. Magistrate Judge                         _signature_
_____                             _____
Name and Title of Judicial Officer                               Signature of Judicial Officer

# AFFIDAVIT

1

I, Neill Thompson, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes and states:

I am a Special Agent with the Drug Enforcement Administration assigned to the Montgomery High Intensity Drug Trafficking Area (HIDTA) Office. I have been a DEA Agent since June 1998. Prior to June 1998, I was a police officer with the Tuscaloosa Police Department for a period of approximately twelve years, with over four of those years as a narcotics detective. During the course of my career, I have written and executed in excess of one hundred search and seizure warrants for narcotics, dangerous drugs, records, books, and proceeds derived as a result of this illicit activity. Further, I have arrested in excess of three hundred individuals for violations of State and Federal narcotics statutes. I have attended and successfully completed training concerning narcotics trafficking, conspiracies, and money laundering methods that narcotics traffickers employ. The following information has been obtained either through personal observation or from other law enforcement officials.

Probable cause being that on April 20, 2006, a reliable Confidential Source (CS) called Drug Enforcement Administration (DEA) Special Agent (SA) Neill Thompson regarding a Hispanic male known to the CS as "MANOLO". The CS said that "MANOLO" called him and told him that he was coming to Montgomery with kilograms of cocaine to sell to the CS. The CS said that MANOLO would be in Montgomery in the early evening hours.

At approximately 5:30 PM, the CS called SA Thompson and said that MANOLO was in town, and that MANOLO said he had 8 kilograms of cocaine. The CS said that MANOLO wanted to meet the CS and show or give him a quantity of the cocaine. The CS met MANOLO and told him he would be back after he had the money for the cocaine. MANOLO was driving a small black pickup truck. MANOLO told the CS he was staying at the Ramada Inn on the West South Boulevard.

At approximately 6:30 PM, the CS met SA Thompson and Task Force Officer Joe Herman and placed recorded calls to "MANOLO". Part of the conversations (which were "push-to-talk" conversations) were recorded by SA Thompson. MANOLO told the CS that he wanted to meet him and give him the cocaine. The CS continued to talk to MANOLO and the conversations were monitored by SA Thompson and TFO Herman, who were in a vehicle with the CS. MANOLO sounded very nervous and kept changing locations. Through the conversations, agents were able to communicate with a marked patrol unit and find the vehicle in which MANOLO was driving, a black Chevrolet S-10 pickup.

The officers executed a vehicle stop on the truck and when they approached it, they noticed an opened box of detergent in the bed. The officers looked at the detergent box and saw a brick shaped object consistent with a kilogram of cocaine in the box of

detergent. A further inspection of the box revealed a total of four brick shaped objects which appear to be kilograms of cocaine. A field test on a sample of the powder from one of the boxes field tested positive for the presence of cocaine.

MANOLO, identified as Joseph GUTIERREZ, and two other occupants of the truck were arrested. The other occupants were Omar TORRES-VAZQUEZ and Carlos SOLANO-OLASCOAGA. TORRES-VASQUEZ had a hotel key on his person from the Ramada Inn. He said that the key was for room # 225.

A check with management at the Ramada Inn revealed that rooms #225 and #236 were obtained by J. GUTIERREZ on April 20, 2006.

Agents that were present at the Ramada Inn observed two Hispanic males in the parking lot of the Ramada Inn and the Chevron station, which is adjacent to the Ramada Inn. Agents approached the first male, Julio ZAVALA-ULLOA. ZAVALA-ULLOA said that he was waiting for three friends that were driving his black pickup truck. ZAVALA-ULLOA also said that he was staying at the Ramada Inn. The other male, Francisco JIMENEZ, was approached by agents and questioned. JIMENEZ said that he was with ZAVALA-ULLOA and staying at the Ramada Inn. JIMENEZ said that he had a Dodge pickup truck in the parking lot and consented to a search of the truck. TFO Francisco Aponte utilized a trained and certified narcotics detection canine ("Pyro") in a search of the truck. "Pyro" indicated for the presence of the odor of narcotics on a black duffel bag in the cab of the truck. TFO Aponte looked inside the bag and observed a white powder substance in the bag. JIMENEZ was detained pending the investigation.

Detective Bob Steelman prepared a sworn affidavit and presented it to the Honorable Troy Massey, Montgomery Municipal Court Judge. The affidavit requested that a warrant be issued authorizing the search of rooms #225 and # 236 at the Ramada Inn. Judge Massey issued the search warrants.

At approximately 10:05 PM, the search warrants were executed. Agents entered room # 225 and found Horacio JAIMES-ALBITER sitting on the bed. JAIMES-ALBITER was alone in the room. Agents searched the room and found a box of Cheer detergent under the bed that JAIMES-ALBITER was sitting on. Agents looked inside the box and found four brick shaped objects consistent with kilograms of cocaine. One of the "bricks" was cut into and it was found to contain white powder. A field test on a sample of the powder was positive for the presence of cocaine. Agents also seized a plastic garbage bag containing several plastic wrappers, consistent with packaging for kilograms of cocaine, from the dresser drawer. No evidence was seized from room # 236.

The six defendants were transported to the Montgomery HIDTA Office and the Montgomery Police Department Special Operations Unit, and processed. At the Montgomery HIDTA Office TFO Joe Herman interviewed JAIMES-ALBITER. JAIMES-ALBITER stated that he is employed in construction for SOLANO-OLASCOAGA. He stated that SOLANO-OLASCOAGA asked him to drive him from the gulf coast to Atlanta,

Georgia on April 19, 2006. He agreed to do so for $300.00. SOLANO-OLASCOAGA told him to drop him off at a gas station in Atlanta, and then to just "hang out" close by. JAIMES-ALBITER did so and at approximately 11:00 AM on April 20, 2006, SOLANO-OLASCOAGA called him and told him to drive to Montgomery. He did so and SOLANO-OLASCOAGA gave him directions to the Chevron station (located next to the Ramada Inn). He saw SOLANO-OLASCOAGA talking on the phone and meeting with two males in the white Dodge pickup (owned by JIMENEZ). SOLANO-OLASCOAGA told him to "hold on" and not come over there where he was. About fifteen minutes later SOLANO-OLASCOAGA called him and told him to go to the Waffle House restaurant and meet with two males and unload some tools from the white Dodge. He did so and met TORRES-VAZQUEZ and ULLOA-JIMINEZ at the Waffle House. TORRES-VAZQUEZ took a box of Cheer detergent from the Dodge and placed it in the bed of his truck, a green Chevrolet S-10. TORRES-VAZQUEZ rode with him to the Ramada Inn where they met with ZAVALA-ULLOA, who was waiting outside. The three went to room # 225, and TORRES-VAZQUEZ told him to bring the box of detergent with him. When they got to room # 225 he noticed another large box of detergent in a red or orange box. ZAVALA-ULLOA told him to come with him to room # 236 and he did so. When they got to the room, ZAVALA-ULLOA told him to wait there. A little later ZAVALA-ULLOA came to the room and told him to accompany him back to room # 225. He did so and when they got to the room he noticed that neither box of detergent were present. ZAVALA-ULLOA told him to wait in the room, and he did so, and a couple of hours later the police came. He said he thought something was probably "fishy" about the situation. All of the defendants are illegal aliens except Joseph GUTIERREZ.

Based on the experience and training of your affiant, it is his belief that probable cause exists to arrest for violations of Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute over 5 kilograms of cocaine. Further that the events occurred within the Middle District of Alabama.

Further your Affiant sayeth naught. I swear under penalty of perjury that the forgoing is true.

NEILL THOMPSON, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before me
this 21st day of April, 2006.

SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE